RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE  09 / 16 / 05
BY  JDB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DANIEL RAY CYRIAK | CIVIL ACTION NO. 05-0361-A |
| VS. | SECTION P |
| WARDEN, HUNT CORRECTIONS CENTER | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed *by pro se* petitioner Daniel Ray Cyriak on January 26, 2005.[1] Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Hunt Corrections Center, St. Gabriel, Louisiana where he is serving a hard labor sentence imposed following a felony conviction and habitual offender adjudication in the Ninth

---

[1] Petitioner's pleadings were received and filed by the court on February 24, 2005; however, he signed his petition on January 26, 2005. In accordance with the "mailbox rule," that date is the earliest date upon which petitioner's pleadings could be said to have been filed. See Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), wherein a bright-line "mailbox rule" for *pro se* prisoners was established. The Supreme Court recognized that without a mailbox rule, prisoners acting *pro se* would be unduly prejudiced in their attempts to exercise their rights under the law: "Unskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access- the prison authorities-and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice." Houston, 487 U.S. at 271-72, 108 S.Ct. at 2382-83.

Judicial District Court, Rapides Parish, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

The petition and its accompanying exhibits, along with the presumptively reliable published jurisprudence of the State of Louisiana establish the following relevant facts:

1. Petitioner was convicted of attempted indecent behavior with a juvenile and sentenced to serve three and half years at hard labor. Petitioner was charged as a third felony offender (La. R.S.15:529.1). He sought delay of the habitual offender hearing claiming that he lacked the mental capacity to assist counsel in his defense. His motion to appoint a sanity commission was denied and following a hearing he was adjudicated a third offender and sentenced to serve seven years at hard labor.

He appealed his conviction, adjudication, and sentence to the Third Circuit Court of Appeals. On November 6, 1996, the Third Circuit affirmed his conviction but vacated his adjudication and sentence as an habitual offender and remanded the matter to the trial court with instructions to determine whether a sanity commission should be appointed. [State v. Cyriak, 96-661 (La. App. 3d Cir. 11/6/1996), 684 So.2d 42.]

2. On remand, the trial court appointed a sanity commission.

On August 11, 1998, based upon the sanity commission's reports, the court determined that petitioner lacked the capacity to assist counsel and ordered him transferred to the Feliciana Forensic Facility for examination.

Thereafter, upon his discharge from Feliciana Forensic Facility, petitioner was determined capable of proceeding with the habitual offender proceedings. On March 11, 1999, the habitual offender hearing was reconvened. Petitioner demanded that he be allowed to represent himself or, in the alternative that another attorney be appointed to represent him. The former motion was granted and the latter was denied. The hearing proceeded; however, because of numerous interruptions, petitioner was removed from the courtroom and the hearing proceeded outside his presence. Petitioner was adjudicated a fourth felony offender and sentenced to serve twenty years at hard labor. [See Doc. 1, Exhibits, Appeal Brief of Daniel Ray Cyriak, "Statement of the Case"]

3. Petitioner apparently did not file a timely motion to appeal his conviction. Thereafter, on May 25, 2001, petitioner apparently filed a motion for out-of-time appeal in the district court. This motion was granted and counsel was appointed to represent petitioner on appeal. On October 23, 2001, a formal order granting an out-of-time appeal was signed and the public defender was appointed to prosecute the appeal. [See Doc. 1,

Exhibits "Motion for Out of Time Appeal."]

4. On January 25, 2002,[2] petitioner's court appointed appellate counsel filed an appeal brief and argued two assignments of error: (1) "The trial court erred in denying defendant's right to counsel by forcing him to represent himself without informing him of the dangers and disadvantages of self-representation." and, (2) "The trial court erred in failing to appoint a Sanity Commission upon defendant's motion as reasonable grounds existed to doubt the accused's mental capacity to proceed." [Doc. 1, Exhibits, Appeal Brief, at p. 7, Assignments of Error]

5. On June 19, 2002 the Third Circuit rendered judgment affirming petitioner's habitual offender adjudication and the sentence imposed thereon. With respect to the first Assignment of Error, the Third Circuit noted:

> "The record reveals a pattern of attempts by the Defendant to delay proceedings. At the arraignment proceeding before the Defendant's first habitual offender adjudication, the Defendant asked for a delay in sentencing so that he could consult with another attorney. Subsequently, at the hearing to determine the Defendant's capacity to proceed held on December 14, 1998, the Defendant was asked if he wanted another counsel. The Defendant stated at that time that he did not want other counsel. However, three months later, at the habitual offender adjudication at issue, the Defendant announced his desire to

---

[2] See Doc. 1, Exhibits, Letter, Third Circuit to Daniel Cyriak, dated October 11, 2004.

4

represent himself. When the trial court
granted that request, however, and refused to
grant the Defendant a continuance, the
Defendant requested other counsel. It appears
from the Defendant's conversation with the
bailiffs prior to the hearing, that he was
planning to assert his right to self-
representation merely to obtain a
continuance.[3] Thus, we find that the
Defendant's actions were purely dilatory
attempts to avoid further proceedings and
constituted an implied waiver of counsel."
See State v. Cyriak, 01-1669 (La. App. 3d
Cir. 6/19/2002), 825 So.2d 600 (unpublished).
[See Doc. 1, Exhibits, Slip Opinion at p. 9]

With respect to the second Assignment of Error, the appeals court noted, "Although appellate counsel claims that at the March 11, 1999 habitual offender adjudication, defense counsel

---

[3] The Third Circuit also noted, "Prior to the [March 11, 1999 Habitual Offender] hearing, the Defendant had a conversation with bailiffs, wherein he told the bailiffs that he could get his case overturned and that he was going to urge various motions to the trial court. If the trial court denied his motions, the Defendant said he would tell the court that he did not want his attorney. the Defendant said he needed a continuance and that he would lie and get a lawyer to take his case that would give him time to 'shoot [his] other motions.' The Defendant also stated that he was going to get the judge on the case. When the proceeding began, the Defendant's attorney informed the court that the Defendant wanted to represent himself. When the court asked the Defendant if this was true, the Defendant replied, 'Yes.' When asked if he understood what it meant to represent himself, the Defendant stated that he understood everything. The Defendant then stated that he 'would like to make a motion, a motion to quash the indictment - information, a motion of double jeopardy, a motion of time limitations, that they have run out.' The court again asked the Defendant if he wanted to represent himself, to which the Defendant responded: 'Yes, sir. I'd like to have a continuance on this here because I haven't had enough time to - he just talked to me about this here and asked me did I want to represent myself and I need some time off.'" State v. Cyriak, at pp. 3-4

5

indicated the Defendant could not fully understand the serious nature of the proceedings he faced, we can find no such statement or motion made by defense counsel at that proceeding." State v. Cyriak, at p. 10.

6. On November 22, 2002, petitioner mailed his application for writ of review to the Louisiana Supreme Court. The application was received and filed by that court on January 27, 2003 and the case was assigned Docket Number 2003-KH-262. [See Doc. 1, Exhibits, Notice of Filing, Louisiana Supreme Court.]

7. On January 14, 2003, petitioner filed an petition for writ of habeas corpus in this court. On December 29, 2003, the petition was dismissed because of the petitioner's failure to exhaust available state court remedies. [See Cyriak v. Warden, Hunt Correctional Center, 1:03-cv-00086, United States District Court, Western District of Louisiana.]

8. On February 6, 2004, the Supreme Court denied writs citing La. C.Cr.P. art. 930.3 and State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172. See State ex rel. Daniel Ray Cyriak v. State, 2003-0262, 865 So.2d 720.

9. On March 17, 2004 petitioner filed another petition for writ of habeas corpus in this court. On September 17, 2004 this petition was dismissed because of petitioner's failure to prosecute. [See Cyriak v. Warden, Hunt Correctional Center, 1:04-cv-00698.]

10. On April 20, 2004 petitioner apparently filed an Application for Post-Conviction Relief in the Ninth Judicial District Court. Petitioner claimed, "...denied right to counsel a sanity commission upon defendant's motion as reasonable grounds existed to doubt the accused's mental capacity to proceed..." [Doc. 7, Exhibits, Application for Post-Conviction Relief]

11. This application was apparently denied on some unspecified date because on July 20, 2004 petitioner filed an application for writ of review in the Third Circuit Court of Appeals. On August 31, 2004, this application was denied. In denying the writ application, the Third Circuit noted, "Relator's claim is repetitive having been reviewed by this court on appeal in State v. Cyriak, an unpublished opinion bearing docket number 01-1669 (La. App. 3d Cir. 6/19/02), writ denied, 03-262 (La. 2/6/04), 865 So.2d 720. Accordingly, Relator's writ application is denied." See Doc. 7 Exhibits, Slip Opinion, State v. Cyriak, KH 04-00974 (La. App. 3d Cir. 8/31/2004). Petitioner apparently did not seek further review in the Supreme Court since the presumptively reliable published jurisprudence of the State of Louisiana shows no published orders or opinions involving the petitioner subsequent to February 6. 2004.

12. As shown above, petitioner filed the instant petition for writ of *habeas corpus* on January 26, 2005. In this petition Cyriak complains that he was denied the right to counsel at the

March 11, 1999 habitual offender hearing and, that the trial court erred when it failed to appoint a sanity commission.

## LAW AND ANALYSIS

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. <u>Villegas v. Johnson</u>, 184 F.3d 467, 468 (5th Cir. 8/9/1999); <u>In Re Smith</u>, 142 F.3d 832, 834, citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[4]

However, the statutory tolling provision set forth in 28 U.S.C. §2244(d)(2) provides that the time during which a

---

[4] Nothing in the record before the court suggests that any State created impediments prevented the filing of the petition. Further, nothing in the record suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. Finally, nothing in the record suggests that the factual predicate of the claims presented was only recently discovered. [See 28 U.S.C. § 2244(d)(1)(B), (C), and (D)].

8

properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. Villegas, 184 F.3d 467, citing Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir.1998). Federal courts may raise the one-year time limitation *sua sponte*. Kiser v. Johnson, 163 F.3d 326 (5th Cir. 1999).

Petitioner did not appeal his conviction and sentence. For AEDPA purposes, petitioner's judgment of conviction and sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review" [28 U.S.C. § 2244(d)(1)(A)], on or about March 19, 1999.[5] See Roberts v.

---

[5] See La. C.Cr.P. art. 914(b)(1) which, at the time of petitioner's conviction, provided, "The motion for an appeal must be made no later than [f]ive days after the rendition of the judgment or ruling from which the appeal is taken." Art. 914 was amended by Act No. 949, § 1 of the 2003 Louisiana Legislature to extend the time period to thirty days.

La. C.Cr.P. art. 13 provides: "In computing a period of time allowed or prescribed by law...the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday. ... A legal holiday is to be included in the computation ... except when ...the period is less than seven days." Petitioner was sentenced on Thursday, March 11, 1999. The five day delay for filing an appeal commenced on Friday, March 12. Saturday March 13 and

Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (if defendant stops the appeal process before entry of judgment by court of last resort, the conviction becomes final when the time for seeking further direct review in the state court expires.)

Under 28 U.S.C. § 2244(d)(1) he had one year, or until March 19, 2000 to file his federal *habeas* petition.

Petitioner apparently filed a Motion seeking an out-of-time appeal ~~on~~ in May, 2001, and again in October, 2001. However, by that time, the one-year AEDPA limitations period had already lapsed. As noted, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. <u>Villegas</u>, 184 F.3d 467, citing <u>Flanagan v. Johnson</u>, 154 F.3d 196, 197 (5th Cir.1998).

Thus, petitioner was unable to toll the limitations period because the limitations period had long expired by the time he commenced post-conviction proceedings which resulted in his out-of-time appeal.

A logical argument could be advanced for the proposition that when a Louisiana court grants an out-of-time appeal, the *habeas* petitioner's AEDPA clock is restarted as of the date upon

---

Sunday, March 14 were legal holidays. The five day period for taking an appeal ended on Thursday, March 18, 1999. Therefore, petitioner's judgment of conviction and sentence became final, at the latest, on Friday, March 19, 1999.

which the out-of-time appeal process has concluded. Stated another way, it could be argued that the petitioner's conviction did not become "final" until the conclusion of the out-of-time appeal process, and, since the one-year limitations period codified at § 2244(d) commenced on "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...", petitioner should be afforded a full year reckoned from the date that the out-of-time appeal process concluded within which to file his petition. However, the Fifth Circuit has had occasion to address the issue of "finality" in this context. In <u>Salinas v. Dretke</u>, 354 F.3d 425 (5th Cir. 2004), <u>certiorari denied</u>, 541 U.S. 1032, 124 S.Ct. 2099, 158 L.Ed.2d 714 (2004) the court examined the effects of an out-of-time appeal on the AEDPA's timeliness provisions.

Salinas was convicted of murder and sentenced to life imprisonment in a Texas court. Like Louisiana, Texas provides for an appeal of right to an intermediate court of appeals and thereafter, the opportunity to seek discretionary review in Texas' court of last resort, the Court of Criminal Appeals. Salinas's conviction was affirmed by the intermediate court of appeals on July 20, 2000. However, his attorney failed to apply for discretionary review in the Court of Criminal Appeals within the thirty day time period provided by law.

11

Under Texas law, discretionary review by the Court of Criminal Appeals is considered to be part of the direct review process. The process ends either when discretionary review is denied or when the time for filing the petition for review lapses. Thus, Salinas's judgment of conviction became final in August, 2000, when he failed to timely file his petition for discretionary review. Under the timeliness provisions of the AEDPA, he had one year, or until August, 2001 to file for federal *habeas* relief. Sometime during the summer of 2001, Salinas filed a state *habeas* application which, under § 2244(d)(2), tolled the limitations period during its pendency. His state *habeas* ceased to be "pending" in March, 2002 when the Court of Criminal Appeals denied relief. At that point, Salinas had only eighteen days remaining of the one-year AEDPA limitations period. Unfortunately, he failed to file his federal *habeas* until late April and it was therefore dismissed as time-barred by the United States District Court in November, 2002.

Meanwhile, and unbeknownst to the District Court, the Texas Court of Criminal Appeals had, in October, 2002, reconsidered Salinas's state *habeas* petition and granted him the right to file an out-of-time petition for discretionary review *sua sponte*.[6]

---

[6] As noted by the Fifth Circuit, quoting the Texas' Court's order, "The effect of this was to 'return [Salinas] to the point at which he can file a petition for discretionary review .... For the purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the Court of Appeals' decision

On appeal, Salinas argued that (1) when Texas' high court granted him the right to file an out-of-time petition for discretionary review, it restored him to the position he was in when he first had the right to seek discretionary review; and, (2) since he still had the right to file for discretionary review, he should be considered to be in the midst of the direct review process; and, (3) therefore, the AEDPA statute of limitations could not have lapsed because the period could begin only on the conclusion of direct review. Or, as this argument was summarized by the Fifth Circuit, "Thus, Salinas argues, his conviction was 'de- finalized,' and the statute of limitations - though legitimately initiated in August 2000 - should be deemed to have begun again with the rejection of the PDR in January 2003." *Id.* at 429.

The Fifth Circuit rejected Salinas's argument:

> "<u>On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between</u>. See § 2244(d)(1), (2). So long as the petitioner is being held pursuant to the same state court judgment, <u>nothing in AEDPA allows for a properly initiated</u>

---

had been rendered on the day the mandate of the Court of Criminal Appeals issues.' <u>Ex Parte Salinas</u>, No. 74,462 at 2 (Tex. Crim. App. 2002). Thus, under state law, Salinas was restored to the position of a recently convicted felon, eligible to pursue a form of direct review in the Court of Criminal Appeals." <u>Salinas v. Dretke</u>, 354 F.3d at 428.

13

> limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review. See § 2244(d)(2).
>
> Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run until after that level of appeal has been denied. That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an 'out-of-time' PDR is part of the direct or collateral review process. If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals has finalized the judgment by declining to grant relief on that level of appeal. If, on the other hand, an 'out-of-time' PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief." *Id.* at 429-430 (emphasis supplied)

Thereafter, the Fifth Circuit analyzed Texas law and concluded that the Court of Criminal Appeals was authorized to grant Salinas his out-of-time petition only through the collateral review process of the Texas *habeas* statute.

Thus, the court concluded,

> "As a result, when a petitioner convicted in the Texas system acquires the right to file an 'out-of-time' PDR, the relief tolls AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to grant further relief, but it does not require a federal court to restart the

> running of AEDPA's limitations period altogether.... Therefore, because Salinas's right to file the 'out-of-time' PDR is necessarily the product of state habeas review, it does not arise under the 'direct review' procedures of the Texas judicial system. Accordingly, the Court of Criminal Appeals' granting of Salinas's writ does not alter the fact that limitations set forth in 28 U.S.C. § 2244(d)(1)(A), properly began to run on August 21, 2000, and fully lapsed on March 31, 2002. " *Id.* at 430-431.

This reasoning is applicable to the case at bar. In Louisiana the only mechanism which can be employed to reinstate lapsed appeal rights and thus grant an out-of-time appeal is the Application for Post-Conviction Relief. See <u>State v. Counterman</u>, 475 So.2d 336 (1985). In <u>Counterman</u>, the Louisiana Supreme Court held:

> "La.C.Cr.P. Art. 915 requires the court to order an appeal when a motion for appeal is made in conformity with Articles 912, 914 and 914.1. <u>However, when a defendant fails to make a motion for appeal within the time provided in Article 914, he loses the right to obtain an appeal by simply filing a motion for appeal in the trial court. This is not because the trial court has been divested of jurisdiction, as was held in State v. Braxton, 428 So.2d 1153 (La.App. 3rd Cir.1983), but because the conviction and sentence became final when the defendant failed to appeal timely</u>.
>
> <u>After the time for appealing has elapsed, the conviction and sentence are no longer subject to review under the ordinary appellate process, unless the defendant obtains the reinstatement of his right to appeal.</u>" State v. Counterman, 475 So.2d at 338. (emphasis supplied)

And, concluded the Court, "...<u>the appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal</u>, after the delay provided in Article 914 has expired, is an <u>application for post conviction relief</u> pursuant to Articles 924-930.7." *Id.* at 339. (emphasis supplied.)

In this case, petitioner's out-of-time appeal could only be granted after he asserted that right through Louisiana's collateral review process, the Application for Post-Conviction Relief. He, like Mr. Salinas, was not thereby entitled to have his conviction "de-finalized."

The collateral review process, started with the filing of petitioner's "Motion" seeking an out-of-time appeal, proceeded through his out-of-time appeal before the Third Circuit, and concluded when the Louisiana Supreme Court denied his writ application. As noted above, the pendency of this process could not serve to toll the limitations period because petitioner did not commence the process until well after the limitations period had already elapsed.

Petitioner's pleadings and exhibits do not suggest that the reckoning periods provided in § 2244(d)(1)(B),(C), or(D) should apply. He has alleged no state created impediment to filing the present application. His claims for relief do not rest on newly recognized constitutional rights, nor on newly discovered facts.

Nor do there exist extraordinary circumstances such as to

warrant the application of equitable tolling thus exempting petitioner's claims from dismissal under §2244(d)(1). The one-year limitation period is subject to equitable tolling but, only in "rare and exceptional cases." Davis v. Johnson, 158 F.3d 806, 811 (5th Cir.1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); see also Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting Davis, 158 F.3d at 811)).

Neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason), ignorance of the law, nor even lack of representation during the applicable filing period merits equitable tolling. See Turner v. Johnson, 177 F.3d 390, 291 (5th Cir.1999); see also Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir.1991) (age discrimination case).

The circumstances alleged herein are not extraordinary enough to qualify for equitable tolling under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), (quoting

17

Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir.1996) emphasis supplied). The pleadings do not suggest that petitioner was "actively misled" nor do they suggest that he was prevented in any way from asserting his rights.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d) and he is not eligible for the benefits of equitable tolling.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,*

Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 16th day of September, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE